KIMBALL-CHILD'S REALTY CO. *v.* McSWEENEY.

*Contracts—Real estate broker—Purchaser's ability to perform implied—Financial inability defeats commission—Burden of proof—Ability of prospective purchaser to buy.*

1. A real estate broker's contract to find a purchaser for property implies a purchaser able to perform.

2. Where the prospective vendor and purchaser of realty are strangers and never saw each other, there having been no direct negotiations between them, and the vendor makes no investigation of the purchaser's ability to pay, but is at all times ready, willing and able to complete the transaction, and relies upon the broker who does all the negotiating, prepares all writings and procures the signatures of the parties, the broker has not earned his commission in case the prospective purchaser is not financially able to perform the contract upon the terms stipulated.

3. In a suit by the broker to collect his commission under such circumstances, the burden is upon him to prove by a preponderance of the evidence that the prospective purchaser was financially able to buy the property at the

price and upon the terms stipulated, and it is not error for the trial court to so charge.

(Decided December 21, 1922.)

ERROR: Court of Appeals for Summit county.

*Messrs. Sheck, Lahrmer, Stevens & Hadley,* for plaintiff in error.
*Mr. Donald Gottwald,* for defendant in error.

WASHBURN, P. J. In this action, plaintiff, The Kimball-Childs Realty Co., sued the defendant, C. E. McSweeney, to recover a real estate commission claimed to be due under a listing contract signed by McSweeney.

The jury found for McSweeney, and the case is before us on error proceedings.

The terms of sale specified in the listing contract by McSweeney were $6000 cash and a balance of $6000 secured by mortgage on the property.

Promptly after the listing contract was signed, the plaintiff company prepared an agreement by which McSweeney agreed to sell, and Ella V. Duckworth, hereinafter referred to as the purchaser, agreed to buy the property for the price named in the listing contract, but, instead of $6000 cash, the contract provided for a cash payment of $40 and a payment of $5960 in five days.

The company procured McSweeney to sign this contract, and then went to the home of the prospective purchaser and had her sign the same and pay the $40, which was turned over by the company to McSweeney. McSweeney did not see the purchaser and had no dealings directly with her, and when she signed the contract she was not financially able to carry out its terms.

When the five days were up, McSweeney appeared at the office of the company, ready, able and willing to fulfill the contract, but the purchaser did not appear.

The company then prepared another writing, by the terms of which the parties by mutual consent continued the original contract for four days, "at which time a land contract will be entered into by each and both parties for the said sale and purchase upon payment of $1000 by the buyer, unless *both parties mutually agree to abide by the original contract referred to.*"

The company procured McSweeney to sign this paper, and later took it to the purchaser and had her sign it.

Here again McSweeney and the purchaser did not see each other and had no direct negotiations.

At the expiration of the four days, McSweeney again appeared at the office of the company, ready, able and willing; but the purchaser did not appear, and was not ready, able and willing to complete the purchase, and nothing further was done in the matter.

This is not a case where the real estate broker brings the buyer and seller together and they by direct negotiations agree upon a sale and enter into a binding contract of sale. In such a case, where the purchaser is financially responsible, so that the sale can be enforced, or where the seller has for himself determined the purchaser's ability to perform, and has agreed to take the promise of the purchaser, there is reason in saying that the broker has earned his commission; but a different situation is presented where the parties are strangers, and never saw each other, and there are no

direct negotiations between them, and the seller makes no investigation of the purchaser's ability, but depends upon the broker, who prepares the writings, does all the negotiating, and procures the signatures of the parties, the seller merely accepting what the broker offers and being at all times ready, willing and able to complete the transaction. The broker's contract to find a purchaser implies a purchaser able to perform, and under the circumstances detailed above the seller has a right to rely upon the broker and assume that the broker has found a purchaser who is able to purchase on the terms stipulated, and should not be deemed to have determined for himself the purchaser's ability to perform. In such situation the broker has not earned his commission unless he can show that the purchaser was financially able to perform, and in a suit by the broker to collect his commission it is not error under such circumstances for the trial judge to charge that the burden is upon him to prove by a preponderance of the evidence that the purchaser was financially able to buy the property at the price and upon the terms stipulated.

There was no error in the court so charging in this case.

Under the circumstances set forth above, if the sole and only reason why the transaction was not completed was the purchaser's financial inability to perform, the broker has not earned and should not be entitled to his commission.

While it is conceded that the purchaser in this case was not financially able to carry out the terms of the original agreement, above referred to, it is claimed that the parties, through the

efforts of the broker, made a second agreement, which the purchaser was able to perform. The second writing, apart from the original, is meaningless, and we do not construe the second writing to be an agreement binding the purchaser to take the property on terms other than those specifically set forth in the original contract.

The second writing is so indefinite and uncertain, and so lacking in essential provisions, as to be unenforceable as a separate agreement; it specifically continued the original contract in force for four days, but it also provided, if both parties did not agree to abide by the terms of the original contract, that then ''a land contract will be entered into by each and both parties for the said sale and purchase upon payment of $1000 by the buyer,'' but no other terms of such a land contract are mentioned. That writing was not a contract of sale on terms other than those contained in the original agreement. It was merely an agreement to enter into an agreement, and therefore the broker could not recover on the theory that he furnished a purchaser ready, able and willing to purchase on some terms other than those in the original agreement; indeed, we regard the second writing, which the broker drew and procured both parties to sign, as nullifying the original agreement ''unless both parties agreed to abide by'' the same, and, as we have said, there being no binding agreement of sale substituted therefor the broker having procured the signing of such writing is bound thereby as much as though he was a formal party thereto.

It is important to remember that the seller in this case was always ready, able and willing to

perform, and there was never at any time anything done by him that in any way prevented the consummation of a sale.

As applied to the facts disclosed by the record in this case there was no prejudicial error in the charge, and substantial justice was done by the judgment of the court below.

*Judgment affirmed.*

PARDEE and FUNK, JJ., concur.